Don GRANT et al., Relators,

v.

The THIRTEENTH COURT OF
APPEALS, Respondent.

No. 94–0581.

Supreme Court of Texas.

Oct. 6, 1994.

Opinion Denying Rehearing Dec. 22, 1994.

Robert E. Brunkenhoefer, Steve T. Hastings, Douglas A. Allison, Rose Vela, Corpus Christi, for relators.

Bob Shannon, Austin, Douglas E. Chaves, Corpus Christi, David R. McAtee, Dallas, Joe R. Greenhill, Austin, John R. Crews, Daniel S. York, Dallas, Joseph R. Knight, Austin, for respondent.

PER CURIAM.

This original proceeding presents the issue of whether a law firm must be disqualified from ongoing litigation because it temporarily employed a legal secretary who had previously worked for opposing counsel. The court of appeals directed the trial court to vacate its disqualification order. *Occidental Chem. Corp. v. Brown,* 877 S.W.2d 27 (Tex. App.1994). We hold that disqualification is required under the facts presented, and therefore direct the court of appeals to vacate its judgment.

The underlying litigation arises from a chemical release in Robstown, Texas, in October 1992. An attorney named Robert Brunkenhoefer, who represents over four

hundred individuals allegedly injured by the emission, hired Sandra Adame as a legal secretary in December 1992 to handle the various files relating to the case. As Brunkenhoefer's primary coordinator for the files, Adame actually opened client files, interviewed clients daily, prepared investigative reports, and oversaw the clients' medical appointments.

Adame's employment with Brunkenhoefer ended in September 1993. Six months later, a temporary service agency arranged for Adame to work at the law firm of Chaves, Gonzales & Rodriguez, which represents at least two defendants in the underlying suit: Occidental Chemical Corporation and Oxy Petrochemicals, Inc. (the OxyChem defendants). The Chaves firm's administrator asked the temporary service agency to inquire into any possible conflicts related to the OxyChem litigation; but the law firm made no similar inquiry of its own when Adame arrived to work.

Adame's duties at the Chaves firm included secretarial and clerical work on the OxyChem litigation: for example, she acted as the firm's contact person for the scheduling of depositions. Some time after she began the work, Adame informed the firm that she had previously worked on the case while working for Brunkenhoefer. Douglas Chaves, a partner at the firm, advised Adame not to disclose any information regarding the case or to discuss her prior work; but he did not instruct Adame to avoid working on the case. Adame continued to assist with the noticing and scheduling of depositions in the OxyChem case.

Toward the end of Adame's third week at the Chaves firm, Douglas Chaves was informed by opposing counsel that a group of plaintiffs intended to file a motion to disqualify the firm based on its employment of Adame. At that time, the Chaves firm learned that Adame had been, in the plaintiffs' terms, "Ms. Oxy" during her employment with Brunkenhoefer. The next morning, the Chaves firm terminated Adame's assignment.

After an evidentiary hearing, the trial court granted the plaintiffs' motion to disqualify the Chaves firm. The OxyChem defendants then obtained mandamus relief in the court of appeals. 877 S.W.2d at 32. The plaintiffs now seek relief against the court of appeals.

This Court has considered similar issues in another case decided today, *Phoenix Founders, Inc. v. Marshall*, 887 S.W.2d 831 (Tex. 1994). In that case, we recognized a rebuttable presumption that a nonlawyer who switches sides in ongoing litigation, after having gained confidential information at the first firm, will share the information with members of the new firm. The presumption may be rebutted upon a showing that sufficient precautions have been taken to guard against any disclosure of confidences. 887 S.W.2d at 835.

The court of appeals in the present case similarly recognized a rebuttable presumption that a nonlawyer employee has shared confidential information with the new employer. 877 S.W.2d at 32. It then held, however, that the presumption was rebutted in this case because members of the Chaves firm testified that no confidences had actually been revealed, and the plaintiffs presented no evidence to the contrary. *Id.* We disagree.

■ The test for disqualification is met by demonstrating a genuine *threat* of disclosure, not an actual materialized disclosure. *See Home Ins. Co. v. Marsh*, 790 S.W.2d 749, 753 (Tex.App.—El Paso 1990, orig. proceeding). This rule encourages institutional measures to guard against any disclosure, whether deliberate or inadvertent. Moreover, any rule focusing on actual disclosure would place a virtually insurmountable burden on the party seeking disqualification, since the only persons who know whether confidences were actually shared will generally be the very lawyers seeking to avoid disqualification.

■ The standard adopted in *Phoenix Founders* is based on the corresponding standard adopted by the American Bar Association, which set out the following requirements, among others, in similar circumstances:

> The nonlawyer should be cautioned ... that the employee should not work on any

matter on which the employee worked for the former employer.... When the new firm becomes aware of such matters, the employing firm must also take reasonable steps to ensure that the employee takes no action and does no work in relation to matters on which the employer worked in the prior employment, absent client consent after consultation.

ABA Comm. on Ethics and Professional Responsibility, Informal Op. 1526 (1988). In the present case, it is undisputed that Adame was never cautioned not to work on any matter on which she worked for her former employer. To the contrary, the Chaves firm permitted Adame to work on the very litigation that she had previously worked on for opposing counsel—even after the firm became aware that she had previously worked on the case.

The OxyChem defendants insist that the measures taken were sufficient because Adame's work at the Chaves firm was limited to tasks such as typing, filing, and scheduling. Given the extent of Adame's prior work on the case, however, even the duties described—when carried out over a period of weeks—posed an unacceptable danger of a prohibited disclosure. *See Smart Indus. Corp. v. Superior Court,* 179 Ariz. 141, 876 P.2d 1176, 1185 (App.1994).[1] This danger was exacerbated by the absence of any effective, institutional screening mechanisms for at least the initial period of Adame's work at the Chaves firm. *See LaSalle Nat'l Bank v. County of Lake,* 703 F.2d 252, 259 & n. 3 (7th Cir.1983) ("*[T]imely* screening arrangements are essential to the avoidance of firm disqualification.").

Under these circumstances, we conclude that the trial court acted properly in disqualifying the Chaves firm from further representation of any defendants in the underlying suit. Accordingly, a majority of the Court grants relators' motion for leave to file, and without hearing oral argument, conditionally grants mandamus relief. Tex.R.App.P. 122. The writ will issue only if the court of appeals does not vacate its judgment.

## SUPPLEMENTAL OPINION ON MOTION FOR REHEARING

On motion for rehearing, the OxyChem defendants assert that circumstances have changed significantly since the time of the court of appeals' decision. In particular, they assert that the Chaves firm has been extensively involved in the case since that time, without objection from the plaintiffs, and that disqualification at this late date would cause tremendous prejudice. The plaintiffs respond that the Chaves firm's participation in the case has been "very minimal," that they have timely objected to the Chaves firm's participation, and that the OxyChem defendants have repeatedly represented to the trial court that they were ready for trial.

■ A party that fails to seek disqualification timely waives the complaint. *See HECI Exploration Co. v. Clajon Gas Co.,* 843 S.W.2d 622, 628–29 (Tex.App.—Austin 1992, writ denied). The untimely urging of a disqualification motion lends support to any suspicion that the motion is being used as a tactical weapon. *See id.* (citing *Spears v. Fourth Court of Appeals,* 797 S.W.2d 654, 658 (Tex.1990)).

■ This Court cannot resolve the conflicting factual assertions by the parties concerning waiver. *See Brady v. Fourteenth Court of Appeals,* 795 S.W.2d 712, 714 (Tex. 1990). We believe the trial court, rather than this Court, should have the opportunity to determine whether plaintiffs have waived their complaint, or whether the Chaves firm's participation in the proceedings over the past seven months has mooted the motion to disqualify. Accordingly, we overrule the motion for rehearing without prejudice to the OxyChem defendants' right to seek relief in the trial court. We are confident that the trial court will reconsider its disqualification order in light of the parties' arguments concerning changed circumstances, including the extent of the Chaves firm's involvement since the time the court of appeals acted and the ade-

---

**1.** "Counsel's avowal that [a legal assistant's] duties are limited to typing and taking phone messages is not sufficient to remove her from involvement in the case in a manner that would significantly decrease the likelihood of a prohibited disclosure, even inadvertently."

quacy of any objection by the plaintiffs to the firm's involvement.