In re Kenneth GEORGE, Epic Holdings, Inc., Epic Healthcare Group, Inc., and Epic·Healthcare Management Co., Relators.

Nos. 05–99–00439–CR, 05–99–00471–CR.

Court of Appeals of Texas, Dallas.

June 22, 1999.

Publication Ordered Sept. 14, 2000.

James J. Hartnett, Jr., Hartnett Law Firm, Dallas, for Vicki Anderson.

Hugh Bartley Sloan, Robert H. Mow, Jr., Matthew Molash, Bobby Rubarts, Hughes & Luce, Dallas, for Kenneth George, Leo Contois and Thomas Schleck.

William D. Sims, Jr., Vinson & Elkins, Dallas , for relator HealthTrust, Inc.

William D. Sims, Jr., Vinson & Elkins, for intervenor Epic Holdings, Inc.

Before LAGARDE, WRIGHT, and O'NEILL.

## OPINION AND ORDER

Opinion By Justice LAGARDE.

In these consolidated original proceedings, relators Kenneth George (George) and Epic Holdings, Inc., Epic Healthcare Group, Inc., and Epic Healthcare Management Co., (hereinafter collectively referred to as "EPIC") request this Court to order the trial court to vacate its March 12, 1999 order requiring disqualified counsel to transfer real party in interest's case file to successor counsel and denying other requested relief. Upon George's request, this Court ordered that the trial court's March 12, 1999 order be stayed pending resolution of this mandamus. For reasons that follow, we now VACATE this Court's March 18, 1999 order staying the trial

court's March 12, 1999 order, and we DENY relators' petitions for writ of mandamus.

Because the entire factual and procedural history of the litigation underlying these proceedings is set out fully in the Texas Supreme Court's opinion in *In re Epic Holdings, Inc.,* 985 S.W.2d 41 (Tex.1998)(orig.proceeding), we set out only those facts necessary to an understanding of the issues before this Court. Real party in interest, Vicki Anderson, sued three corporations and their former chief executive officer, George, and two other corporate directors alleging they breached their fiduciary duties by exorbitantly compensating themselves and other executives in connection with the acquisition of EPIC Holdings by HealthTrust, Inc.—The Hospital Company. Anderson also alleged that HealthTrust conspired to assist the directors in their self-dealing in order to gain their approval of the acquisition. *In re Epic Holdings, Inc.,* 985 S.W.2d at 44. A few days before the merger was to close, Anderson, an employee whose retirement account was affected by the merger, sued to enjoin the merger and to recover damages. *In re Epic Holdings, Inc.,* 985 S.W.2d at 46. A state court district judge issued a temporary restraining order stopping the merger. The defendants removed the case to federal court. In exchange for withdrawing her opposition to the merger, Anderson was assigned "whatever claims EPIC had against its directors and HealthTrust arising out of the actions and events described by Anderson in her original petition." The merger closed. Anderson amended her petition to include claims on behalf of EPIC and to drop EPIC as a defendant. *In re Epic Holdings, Inc.,* 985 S.W.2d at 46.

Although EPIC was no longer a defendant, EPIC intervened in the litigation to move to disqualify Anderson's counsel for the same reasons urged by George. *In re Epic Holdings, Inc.,* 985 S.W.2d at 44. Relators moved to disqualify Anderson's counsel under rule 1.09 of the Texas Rules of Professional Conduct, contending that the case was "substantially related" to matters in which their former law firm had represented relators and that Anderson's counsel was questioning the work done by the former law firm. The Supreme Court held that Anderson's counsel was disqualified. *In re Epic Holdings, Inc.,* 985 S.W.2d at 54.

*Proceedings in the Trial Court After Remand*

After remand of the case to the trial court, Anderson's disqualified counsel withdrew and successor counsel appeared. Intervenor EPIC then filed a motion to prevent disqualified counsel from assisting successor counsel. EPIC's motion sought to prohibit (1) disqualified counsel from receiving any financial benefit from this action, (2) Anderson and successor counsel from obtaining or reviewing legal memoranda or other work product in this case or related cases, and (3) Anderson and successor counsel from communicating with "or accepting any guidance from" any of the disqualified attorneys or their consultants or experts in this case or related cases.

EPIC requested the trial court to order the disqualified attorney to turn over Anderson's case file to the court to be sealed. George joined in this motion and asked the trial court to prohibit (1) disqualified counsel from turning over to successor counsel the record of the first trial in this case, and (2) successor counsel from reviewing the record of the first trial in this case until redacted by George. George also requested the trial court to review an order by a former judge in the case ordering George's counsel to turn over certain allegedly privileged documents to Anderson's counsel.

At a hearing on the motions, successor counsel testified that he had already read part of the court's record for the case, including excerpts from the trial. On March 12, 1999, the trial court ordered

that "[the successor law firm's attorneys and employees] shall have no further contact with [the disqualified attorneys] regarding this lawsuit and/or any other matter relating to or involving the Plaintiff, the Defendants, EPIC Holdings, Inc., EPIC Healthcare Group, Inc., or EPIC Healthcare Management Company, except for the transfer and receipt of Vicki Anderson's files, which [the disqualified attorneys] are hereby ordered to transfer to [the successor law firm]." The trial court denied all other requested relief.

### Original Proceeding in the Court of Appeals

George filed a petition for writ of mandamus in this Court. This Court stayed the trial court's March 12, 1999 order pending disposition of this writ. EPIC then filed a virtually identical petition. This Court consolidated the two original proceedings.

### Contentions of the Parties

*Relators*

Collectively, relators argue that successor counsel should not review or use the disqualified attorney's file or any discovery or documents filed of record in "any other lawsuit or matter" involving the same transaction as the underlying litigation. Relators contend that successor counsel should not see disqualified counsel's case file in Anderson's case because the file may reveal confidential information from the substantially related matter. If successor counsel uses the file, relators argue, the protection of client confidences by disqualification is a hollow right. Relators also seek to prevent successor counsel from reviewing the reporter's record of the first trial in this case because that file reveals the "mental impressions of disqual-

ified counsel." Relators also request the Court to restrict successor counsel's access to other files of cases pending in two federal courts and in an Alabama state court that involve the same parties or transactions.

*Real Party in Interest*

Real party in interest Anderson contends that relators waived their right to the requests they make because: (a) they did not make such requests as a part of their earlier-filed motion to disqualify; (b) relators have already produced documents they now claim are privileged; and (c) relators agreed to let successor counsel see many of the documents in one of the related federal cases.

*Relators' Remedy*

The parties have not cited us to, nor have we found, any Texas state case holding that the extraordinary remedy of writ of mandamus is an appropriate remedy to challenge a trial court's order requiring a disqualified counsel to transfer a former client's case file to successor counsel or to prevent successor counsel access to the reporter's record of a prior trial.

■■■ This Court has, in an original proceeding, addressed the issue of whether a trial court abused its discretion by refusing to disqualify plaintiff's counsel who allegedly used privileged documents that the lawyer's client (in another lawsuit) secretly removed from defendants' offices. See *Conley, Lott, Nichols Machinery Company, et al. v. The Honorable David Brooks*, 948 S.W.2d 345 (Tex.App.—Dallas 1997) (orig. proceeding). This Court held that the trial judge abused his discretion in failing to disqualify counsel for improperly using confidential materials that he had obtained through no wrongdoing on his part.[1] Upon review of this Court's deci-

---

1. Although the trial court refused to disqualify counsel, it ordered counsel to return all copies of the documents and not to use them in the litigation. Because relator did not challenge that portion of the trial court's ruling, that issue was not before either this Court or

the Texas Supreme Court upon its review of this Court's decision. *In re Dana Meador*, 968 S.W.2d 346, 350 (Tex.1998)(original proceeding). The only issue before the supreme court was the issue of disqualification of counsel. *Id.*

sion, the supreme court held that the trial court did not abuse its discretion in failing to disqualify counsel and conditionally granted writ of mandamus against this Court. *In re Dana Meador*, 968 S.W.2d 346 (Tex.1998)(orig.proceeding). It is well settled that mandamus is a proper remedy to correct trial court error in disqualifying or refusing to disqualify counsel under disciplinary rule 1.09. *See In re Epic Holdings*, 985 S.W.2d at 54. *Nat'l Med. Enters., Inc. v. Godbey*, 924 S.W.2d 123, 133 (Tex.1996)(orig.proceeding). Because the issue before us in this proceeding is analogous to and a variant of the disqualification of counsel issue involving essentially the same considerations, we conclude that mandamus is an appropriate remedy to challenge a trial court's order requiring a disqualified counsel to transfer a former client's case file to successor counsel.

### Mandamus Standard

■ Mandamus may issue if there is a clear abuse of discretion by the trial court or violation of a ministerial duty in ruling on a motion to disqualify. *See Nat'l. Med. Enters.*, 924 S.W.2d at 128. A clear abuse of discretion occurs when a court errs in analyzing or applying the law to the facts. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992)(orig.proceeding). A clear abuse of discretion also occurs when in the resolution of a factual issue the trial court's decision is so arbitrary and unreasonable that based on the facts presented the trial court could make only one reasonable decision. *Id.* at 839–40.

### Waiver

■ We first address Anderson's waiver argument. Anderson argues that relators have waived their right to the relief they seek because: (a) their requests were untimely because they were not raised as a part of the previously decided motion to disqualify; (b) relators have already produced documents they claim are privileged; and (c) relators agreed to let suc-

cessor counsel see many of the documents in one of the related federal cases.

■ Waiver occurs if a request for disqualification is not filed in a timely manner. *See Grant v. Thirteenth Court of Appeals* 888 S.W.2d 466, 468 (Tex.1994)(orig.proceeding). In determining timeliness, the court is to consider the time between when a party learns of the alleged conflict and moves to disqualify. *See Spears v. Fourth Court of Appeals*, 797 S.W.2d 654, 656 (Tex.1990)(orig.proceeding). The Court should also consider evidence that the motion to disqualify is urged for delay or other tactical purpose. *See Grant*, 888 S.W.2d at 468; *Spears*, 797 S.W.2d at 658.

Relators first moved to disqualify Anderson's former counsel over four years ago. Relators filed amended motions to disqualify in 1996. The Texas Supreme Court granted the amended motions based on disqualified counsel's actions during trial in June 1996. Relators only now request denial of access of successor counsel to these materials. Relators offer no reason for the delay in making these requests. We conclude that relators' requests come too late and, therefore, are untimely. Consequently, relators have waived any right they may have to prohibit the transfer. *See EEOC v. Orson H. Gygi Co., Inc.* 749 F.2d 620, 622 (10th Cir.1984); *EZ Paintr Corp. v. Padco, Inc.*, 746 F.2d 1459, (Fed.Cir.1984); *International Bus. Machines Corp. v. Levin*, 579 F.2d 271, 283 (3rd Cir.1978); *First Wisconsin Mortgage Trust v. First Wisconsin Corp.*, 584 F.2d 201, 203 (7th Cir.1978); *Behunin v. Dow Chemical Co.*, 642 F.Supp. 870, 872 (D.Colo.1986); *Hallmark Cards, Inc. v. Hallmark Dodge, Inc.* 616 F.Supp. 516, 519 (W.D.Mo.1985); *E. F. Hutton & Co., Inc. v. Brown*, 305 F.Supp. 371, 400 (S.D.Tex.1969). Because relators did not timely move to prohibit access of successor counsel to these materials, we conclude the trial court did not clearly abuse its discretion in denying relators' motions. Accordingly, the Court hereby VACATES its

March 18, 1999 order staying the trial court's March 12, 1999 order.

Because the record does not reflect that the trial court clearly abused its discretion, we DENY relators' petitions for writ of mandamus.

